UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| YVETTE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 12-105-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NOR-COM, INC., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Nor-Com, Inc.'s motion to dismiss the claims asserted against it by Plaintiff Yvette Smith. [Record No. 16] Nor-Com contends that Smith's complaint fails to state a claim upon which relief may be granted under either Kentucky or Ohio law. Additionally, it asserts that the complaint lacks the factual allegations necessary to support Smith's claims. For the reasons explained below, the Court will grant the motion, in part. However, the motion will be overruled as it relates to Smith's claim of race discrimination.

**I.**

This case arises from Smith's employment with Nor-Com from April 19, 2010, when she was hired, to her termination on December 21, 2010. [Record No. 1 ¶¶ 8, 35] According to her complaint, Smith had a "lucrative job in furniture sales when she was recruited to Nor-Com by its executive, Jim Huber." [*Id.* ¶ 5] Smith told Huber during her interview that it would take her "12 to 18 months to get up to speed." [*Id.* ¶ 6] Huber assured her: "we will teach you what you need to know. You spend a year learning – the sales will come." [*Id.*] Additionally, Huber

stated that Nor-Com's goal was for Smith to sell to Wright-Patterson Air Force Base, "in 3-5 years." [*Id.* ¶ 7]

Smith began working at Nor-Com, where she was the "first and only African-American employee." [*Id.* ¶ 9] She alleges that, in July 2010, she "was regularly told what a great job she was doing." [*Id.* ¶ 10] Specifically, Nor-Com's president, Dan VanMeter suggested that she take the lead on developing a sales strategy for the federal government. However, Smith soon became disillusioned with her position. In fact, she claims to have discovered that the company was not as close to attaining certification from the U.S. General Services Administration (GSA) as she had been told during the hiring process. [*Id.* ¶¶ 11-13] Soon thereafter, VanMeter appointed Smith to "lead the team getting on the GSA schedule." [*Id.* ¶ 16] Smith states that she felt that this task was outside the scope of what she had been hired to do. Moreover, she believed the goal to be unrealistic. [*Id.* ¶¶ 17-19]

Smith also became concerned about Nor-Com's business practices. She alleges that, "[o]n more than one occasion, Huber asked [her] to lie to potential and existing customers." [*Id.* ¶ 20] One instance involved a statement that Nor-Com "had done a project at the White House." [*Id.* ¶ 22] When Smith asked about this, VanMeter told her that this was incorrect, and "that Huber had created a document and listed the White House as a Nor-Com customer." [*Id.* ¶ 24] When Smith told VanMeter that Nor-Com "could really get into trouble if someone checked those facts," VanMeter instructed her not to use the false information. [*Id.* ¶ 25] In another example, Huber allegedly directed Smith to represent to Northern Kentucky University that Nor-Com had "provided product" for a project in Chicago although, in reality, it had not been

involved in the project. [*Id.* ¶ 27] When Smith told Huber that she would not lie, Huber "apologized for asking her to go against her beliefs." [*Id.* ¶ 29]

Additionally, Smith made several complaints during her employment with Nor-Com. She asked VanMeter "not to use profanity in meetings," and he "made it known that he did not appreciate" her suggestion. [*Id.* ¶ 32] Smith objected to Nor-Com's service manager referring to a client as "f*ing Indians." [*Id.* ¶ 34] And she complained about a potentially unlawful business enterprise involving VanMeter's significant other. [*Id.* ¶ 33] Smith claims that she was terminated after her internet search on "how to deal with a racially-hostile work environment" was seen by another Nor-Com employee. [*Id.* ¶ 35]

Smith filed suit against Nor-Com on January 11, 2012, asserting the following claims: (1) race discrimination; (2) promissory estoppel; (3) intentional infliction of emotional distress (IIED); (4) retaliation; and (5) breach of the duty of good faith and fair dealing. Nor-Com moved to dismiss the complaint on May 8, 2012. [Record No. 16] After reviewing the briefs, the Court finds that oral argument is not necessary to resolve the pending motion.

**II.**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although

the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

### III.

A federal district court, sitting in diversity, must apply "the law, including the choice of law rules, of the forum state." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003). Kentucky's choice of law principles dictate that, for actions sounding in tort, "'significant contacts' . . . permit the application of Kentucky law." *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009) (quoting *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972)). However, in contract actions, "the law of the state with the greatest interest in the outcome of the litigation should be applied." *Bonnlander v. Leader Nat'l Ins. Co.*, 949 S.W.2d 618, 620 (Ky. Ct. App. 1996). Kentucky courts determine this by asking "which state has the most significant relationship to the transaction and the parties." *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982) (internal quotation marks omitted).

Employment discrimination claims sound in tort. *Cf. Macki v. Ford Motor Co.*, 803 F.2d 720 (6th Cir. 1986) (unpublished) (analyzing employment discrimination claim brought under Michigan law using choice of law principles for tort actions). Here, there are significant contacts with Kentucky because Nor-Com's corporate office is located in Hebron, Kentucky. [Record No. 1 ¶ 1] Additionally, according to Nor-Com, many of Smith's allegations "involve conversations that took place at the company's offices in Kentucky." [Record No. 16, p. 4]

Therefore, the Court will apply Kentucky law to Smith's race discrimination, IIED, and retaliation claims.[1]

However, the test for contract claims is more strict. The Court applies the law of the state with the "most significant relationship" to the events that gave rise to the contract claims. *Breeding*, 633 S.W.2d at 719. In the present case, while the complaint does not specify where many of the events occurred, Smith asserts that the issues underlying her claims of promissory estoppel and breach of duty of good faith and fair dealing "occurred nearly exclusively in Ohio." [Record No. 23, p. 6] As Nor-Com concedes, Smith performed work in "various states including Ohio, Kentucky, and Illinois." [Record No. 16, p. 4] The Court concludes that Smith's residence in Ohio, combined with the work that she conducted in Ohio, make it the state with the "greatest interest in the outcome of the litigation." *Bonnlander*, 949 S.W.2d at 620. Because Smith's promissory estoppel and breach of duty claims are contractual in nature, the Court will analyze them under Ohio law.

### A. Race Discrimination (Count I)

Smith alleges that Nor-Com discriminated against her because of her race. Under the Kentucky Civil Rights Act (KCRA), an employer may not "fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race." KRS § 344.040(1)(a). Because the KCRA was enacted to implement the Federal Civil Rights Act of

---

1 As Nor-Com points out, the analysis for Smith's race discrimination and retaliation claims is essentially the same under both Kentucky and Ohio law. [Record No. 16, pp. 5-6, 18]

1964, its language is "virtually identical" to that of Title VII.[2]  *Jefferson Cnty. v. Zaring*, 91 S.W.3d 583, 586 (Ky. 2002).  Thus, the same analysis applies to discrimination claims under Title VII and the KCRA.  *See id.*

To establish a prima facie case of race discrimination in the absence of direct evidence, a plaintiff must demonstrate that: "1) [s]he is a member of a protected class; 2) was qualified for the job; 3) [s]he suffered an adverse employment decision; and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001).  These elements represent "an evidentiary standard, not a pleading requirement." *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012).  However, the Court must still assess whether the "complaint's factual allegations support its legal conclusions, and that standard applies to causation in discrimination claims." *Id.* at 610.  Therefore, the Court will analyze the plausibility of Smith's claim within the framework of a prima facie case of race discrimination.

Smith has properly alleged that she is in a protected class and that she was terminated from her employment.  [Record No. 1 ¶¶ 9, 35-37]  Additionally, despite Nor-Com's argument to the contrary, the factual allegations in Smith's complaint support an inference that Smith was objectively qualified for her employment at Nor-Com.  [*See id.* ¶¶ 5, 10, 16]  Therefore, Smith's race discrimination claim may survive Nor-Com's motion to dismiss if she has pleaded facts that

---

[2]  Under Title VII, an employer may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race. . ."  42 U.S.C. § 2000e-2(a)(1).

create more than a "sheer possibility" that she was either treated differently or terminated on account of her race. *Iqbal*, 556 U.S. at 678.

Smith alleges that she was treated differently from white employees at Nor-Com. [Record No. 1 ¶ 41] Nor-Com asserts that she has failed to "allege facts that would establish that a comparable non-African American employee was treated more favorably." [Record No. 16, p. 8] The Court agrees. Smith's complaint lacks any allegations regarding disparate treatment other than the conclusory assertion that Nor-Com "treated Plaintiff differently than non-African-American employees because of [her] race."[3] [Record No. 1 ¶ 41] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to create a plausible claim for relief. *Iqbal*, 556 U.S. at 678; *see also Keys*, 684 F.3d at 610 (reversing dismissal of race discrimination claim where complaint detailed "several specific events" where the plaintiff received differential treatment from her Caucasian counterparts). The allegations of Smith's complaint do not support a claim for race discrimination based on a theory of disparate treatment.

However, Smith has also alleged that she was terminated because of her race. [Record No. 1 ¶ 42] A plaintiff may raise an inference that her termination was based on an impermissible consideration of race by demonstrating that she was replaced by someone outside

---

3   Although Smith claims that the other Nor-Com employees were outside the protected class, her complaint lacks any factual allegations that support an inference that those employees were treated more favorably. [Record No. 1 ¶ 9] As Smith points out, it is entirely possible that a jury could "make the inference that other employees had conducted themselves similarly" to Smith yet had not been terminated for that conduct. [Record No. 23, p. 10] However, the complaint itself — which is the subject of the Court's inquiry on a motion to dismiss — lacks such an assertion. "The Court cannot read factual allegations into a complaint that simply aren't there." *Cruz-Salazar v. Pugh*, No. 4:12 CV 0917, 2012 WL 3112406, at *11 (N.D. Ohio July 31, 2012).

her protected class. *See Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). Smith's complaint alleges that one week after her termination, she "learned that VanMeter's friend Lois Spires (a Caucasian employee) was taking over Smiths's accounts." [Record No. 1 ¶ 37] Nor-Com argues that this is insufficient to show replacement by a person outside the protected class. It maintains that Smith must allege that she was "replaced by someone from outside the company" to establish the fourth element of her prima facie case. [Record No. 16, p. 8] This is not a correct statement of the law. Rather, an employee is replaced "when another employee is hired *or reassigned* to perform the plaintiff's duties." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (emphasis added).

It is true that an employee "is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Id.* However, while Smith's factual allegation regarding her replacement is ambiguous, it is sufficient at this stage in the litigation. The phrase "taking over" could mean that Spires simply agreed to shoulder some of Smith's responsibilities in addition to her own; however, it could also mean that Spires was reassigned from another position and thus, in essence, replaced Smith. In short, this is a question of fact. The fact that Smith's allegation is unclear is not sufficient grounds for this Court to dismiss her claim. Requiring Smith to use the word "reassign" to make out a claim for race discrimination would be akin to applying a heightened pleading standard, which is impermissible under Rule 8 of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 570 (explaining that a court applies a heightened pleading requirement if it insists that a plaintiff "allege 'specific facts'

-8-

beyond those necessary to state [her] claim and the grounds showing entitlement to relief"). Smith has asserted a plausible claim that Nor-Com impermissibly discriminated against her on account of her race. *See Keys*, 684 F.3d at 610 ("According to the Supreme Court, 'plausibility' occupies that wide space between 'possibility' and 'probability.'"). The Court, therefore, will deny Nor-Com's motion to dismiss Smith's claim of race discrimination.

### B. Retaliation (Count IV)

Smith claims that she was terminated in retaliation for raising concerns about Nor-Com's "treatment of racial minorities, and the presence of a racially-hostile environment." [Record No. 1 ¶ 60] Under Kentucky law, it is unlawful for a person to "retaliate or discriminate in any manner against a person because [s]he has opposed a practice declared unlawful by this chapter." KRS § 344.280(1). As with race discrimination claims, Kentucky courts look to federal law for guidance when considering claims brought under KRS § 344.280. *Mountain Clay, Inc. v. Commonwealth, Comm'n on Human Rights*, 830 S.W.2d 395, 396 (Ky. Ct. App. 1992). To make out a prima facie case of retaliation, therefore, an employee must demonstrate that

> (1) he was engaged in opposition to practices made unlawful by Title VII . . .[4] (2) his activity was protected (3) he was subjected to adverse treatment by the employer or labor union, and (4) there was a causal connection between his opposition or participation and the retaliation.

*Id.*; *see Brooks v. Lexington-Fayette Urban Cnty. Housing Auth.*, 132 S.W.3d 790, 803 (Ky. 2004).

---

[4] A plaintiff may also establish a prima facie case of retaliation by showing that she "made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding, or hearing under this chapter." KRS § 344.280(1). Because Smith does not allege that she was retaliated against for any such action, her claim must be analyzed under the "opposition clause" of section 344.280(1), which prohibits discrimination against an employee for her opposition to the employer's unlawful discriminatory actions.

Nor-Com seeks dismissal of this claim on the grounds that Smith's "allegations do not establish that she engaged in protected activity."[5] [Record No. 16, p. 18] Under the KCRA, an employee engages in protected activity by "contesting any unlawful employment practice." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989). However, "[a]n employee may not invoke the protections of the Act by making a vague charge of discrimination." *Id.*

Nor-Com is correct that opposing profanity and lying is not protective activity. [Record No. 16, p. 20] Additionally, Smith's internet search concerning hostile work environments does not qualify as protected activity because it does not constitute "mak[ing] an overt stand against suspected illegal discriminatory action." *Comiskey v. Auto. Indus. Action Grp.*, 40 F. Supp. 2d 877 (E.D. Mich. 1999); *see Booker*, 879 F.2d at 1313 (holding that a "vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice"). Finally, Smith's objection to Nor-Com's service manager calling clients "f*ing Indians" does not constitute protected activity because the service manager's statement — however abhorrent — is not unlawful under Chapter 344 of the Kentucky Revised Statutes. *See* KRS § 344.280(1); *see* KRS §§ 344.010-344.500.

Smith contends that Nor-Com's "actions taken as a whole fostered a racially-hostile environment."[6] [Record No. 23, p. 13] She maintains that she engaged in protected activity by

---

5    Nor-Com also contends that Smith failed to plead "that Nor-Com['s] decision makers knew of her activity." [Record No. 16, p. 18] The Court rejects this argument because Smith specifically alleged that she "raised concerns to [Nor-Com's] management about its treatment of racial minorities, and the presence of a racially-hostile environment." [Record No. 1 ¶ 60]

6    Smith did not raise a hostile work environment claim in her complaint.

-10-

expressing her opposition to the conduct that created this environment. This argument is unavailing. Smith's belief that Nor-Com fostered a hostile environment toward racial minorities does not cure the deficiencies of her retaliation claim.[7] Thus, the Court rejects Smith's assertion that the incidents alleged in her complaint — which, taken individually, are not violations of the KCRA — constitute an unlawful employment practice when considered together. Smith has failed to adequately allege that she engaged in protected activity and her complaint does not state a claim for retaliation that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

### C.     IIED (Count III)

Smith also asserts a common law claim for IIED. This claim fails as a matter of law because IIED claims arising from the same facts as KCRA claims are pre-empted. Smith's IIED claim is based on the same conduct that underlies her KCRA claim [*see* Record No. 1 ¶ 52]; therefore, it is barred. *See Kroger Co. v. Buckley*, 113 S.W.3d 644, 647 (Ky. Ct. App. 2003) (finding that a "KRS Chapter 344 claim preempts a common law IIED/outrageous conduct claim" where the plaintiff relies on the same facts for both claims); *see also Buckner v. Commonwealth*, No. 3:10-36-DCR, 2010 WL 3168089, at *4 (E.D. Ky. Aug. 10, 2010).

Even if it were not preempted by the KCRA, however, this claim would fail because the complaint lacks any factual content that gives rise to a colorable IIED claim. To establish an IIED claim under Kentucky law, the plaintiff must prove the following four elements: "(1) the

---

7       Moreover, the cases Smith relies on in her response are inapposite. Each stands for the proposition that specific factual allegations illustrating the racially hostile attitudes among the managers of a company can "buttress [a plaintiff's] claims that she had been treated differently because of her race." *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998) ("Evidence of a racially hostile atmosphere . . . makes the existence of racially motivated actions by management . . . more probable."); *see Polanco v. City of Austin, Texas*, 78 F.3d 968, 980 (5th Cir. 1996) (noting that "hostile treatment of and attitude toward Hispanics is probative of whether Polanco was terminated because of his nationality").

wrongdoer's conduct must be intentional or reckless, (2) the conduct must be outrageous and intolerable, (3) there must be a causal connection between the conduct and the emotional distress, and (4) the emotional distress must have been severe." *Wilson v. Lowe's Home Ctr.*, 75 S.W.3d 229, 238 (Ky. Ct. App. 2001) (citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984)).

Smith alleges that Nor-Com owed her a duty, breached its duty, and caused her injury "willfully, maliciously, with spite and ill will, and with a reckless disregard for [her] legal rights." [Record No. 1 ¶¶ 52-58] Count III contains merely "a formulaic recitation of the elements" of an IIED claim, with no factual support for Smith's conclusory statements. *Twombly*, 550 U.S. at 555. Looking to the rest of the complaint, there are no allegations of conduct on the part of Nor-Com that would constitute "outrageous and extreme acts." Even if true, none of the conduct alleged in this complaint was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Hall v. Consol of Ky, Inc.*, 162 F. App'x 587, 591 (6th Cir. 2006) (quoting *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990)). At most, this claim consists of "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Thus, Smith's IIED claim must be dismissed for failure to state a claim upon which relief can be granted.

### D. Promissory Estoppel (Count II)

Smith seeks recovery under a theory of promissory estoppel, claiming that she relied on Nor-Com's representations to her detriment when she "resigned her secure and lucrative job in sales for another company in order to accept the employment Huber offered on behalf of Nor-

Com." [Record No. 1 ¶ 49] In Ohio, there is a "strong presumption of at-will employment." *Reasoner v. Bill Woeste Chevrolet, Inc.*, 730 N.E.2d 992, 996 (Ohio Ct. App. 1999); *see Painter v. Graley*, 639 N.E.2d 51, 55 (Ohio 1994) ("Traditionally, this doctrine allowed an employer to terminate the employment of his worker at will for any cause, at any time whatsoever, even if done in gross or reckless disregard of [an] employee's rights." (internal quotation marks omitted)). However, there are exceptions to this rule. The "doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise." *Mers v. Dispatch Printing Co.*, 483 N.E.2d 150, 155 (Ohio 1985). To make out a claim for promissory estoppel, an employee must demonstrate the following elements: "(1) a clear and unambiguous promise; (2) reliance by the party to whom the promise was made; (3) the reliance is reasonable and foreseeable; and (4) the party relying on the promise must have been injured by the reliance." *Patrick v. Painesville Commercial Props.*, 704 N.E.2d 1249, 1254 (Ohio Ct. App. 1997).

Smith alleges that Huber's promise regarding "getting [her] back on the Wright Patterson Air Force Base, selling Nor-Com services, in 3-5 years was a clear and unambiguous promise of employment for a definite period sufficient to create an exception to Ohio's employment-at-will doctrine." [Record No. 1 ¶ 46] Nor-Com counters that Huber "spoke to goals and expectations, not promises of a specific term of employment or a heightened level of job

security." [Record No. 16, p. 13] It maintains that Smith's "allegations depict discussions of future career development," which are not enforceable promises. [*Id.*]

Huber's statements — made during Smith's employment interview — cannot reasonably be read to constitute a "discrete promise relating to job security." *Dawson v. Qube Corp.*, 6 F. Supp. 2d 677, 680 (N.D. Ohio 1998). The Ohio Supreme Court has held that "a promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the well-established doctrine of employment-at-will." *Wing v. Anchor Media, Ltd.*, 570 N.E.2d 1095, 1099 (Ohio 1991). In *Helmick v. Cincinnati Word Processing, Inc.*, 543 N.E.2d 1212 (Ohio 1989), the Ohio Supreme Court found that an employer's promise that the employee "would have a job if her performance was satisfactory" was sufficient to create an exception to the doctrine of at-will employment. *Id.* at 1217 (internal quotation marks omitted). Here, Smith has alleged no such explicit promise. Huber's statement about having Smith sell to Wright-Patterson Air Force Base was an expression of Smith's possible opportunities at Nor-Com, not a "specific promise of continued employment."[8] *Patrick*, 704 N.E.2d at 1254. Without a specific factual allegation supporting Smith's contention that she received a promise of employment for a definite period of time, the Court cannot infer that Nor-Com "is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, this claim must be dismissed for failure to state a claim upon which relief may be granted.

### E. Breach of Duty of Good Faith and Fair Dealing (Count V)

---

8 Most job interviews involve similar statements regarding the potential for advancement and opportunities available in a given position. If this type of communication were enough to induce detrimental reliance, then almost every terminated employee would have a cause of action for promissory estoppel.

Finally, Smith claims that Nor-Com breached its duty of good faith and fair dealing. As stated above, there is a presumption under Ohio law that all employment is terminable at will. *See Reasoner*, 730 N.E.2d at 996. And "Ohio law does not recognize a good faith and fair dealing requirement in employment-at-will relationships." *Cramer v. Fairfield Med. Ctr.*, 914 N.E.2d 447, 455 (Ohio Ct. App. 2009). Therefore, this claim fails as a matter of law.

Smith argues that she has "established a covenant with her employer, in which a duty of good faith and fair dealing exists." [Record No. 23, p. 14] However, her complaint lacks the factual allegations to support such a conclusion. Although Smith alleges that she was "told what a great job she was doing" [Record No. 1 ¶ 10], "general statements of praise" are not sufficient to create an express or implied employment contract. *Reasoner*, 730 N.E.2d at 995. Smith contends, however, that she established the existence of a contract with Nor-Com through her claim for promissory estoppel. Even if Smith had sufficiently alleged promissory estoppel in her complaint, that claim would not support the separate claim for breach of the duty of good faith and fair dealing. Promissory estoppel is an equitable doctrine that allows an employee to recover for her detrimental reliance on a promise of continued employment — it does not relieve a plaintiff of the burden of proving the existence of an express or implied employment contract. *D'Amore v. Mathews*, 952 N.E.2d 1212, 1214 n.1 (Ohio Ct. App. 2011); *see Reasoner*, 730 N.E.2d at 995 (explaining that for a court to find an express or implied employment contract, there "must be specific evidence to show that the parties mutually assented to something other than at-will employment").

Further, Smith asserts a public policy rationale behind her claim. Citing *Painter*, she contends that she is "excepted to the doctrine of employment at will because her termination was in violation of an articulated public policy under" Ohio state law. [Record No. 23, p. 14] In *Painter*, the Ohio Supreme Court discussed the public policy exception to the employment-at-will doctrine. 639 N.E.2d at 55. Under this exception, a "discharged employee has a private cause of action sounding in tort for wrongful discharge where his or her discharge is in contravention of a 'sufficiently clear public policy.'" *Id.* (quoting *Greeley v. Miami Valley Maint. Contractors, Inc.*, 551 N.E.2d 981, 986 (Ohio 1990)).

Because Count V of Smith's complaint asserts a claim sounding in contract, the Court need not consider whether Smith's complaint articulates a "clear public policy" or sufficiently alleges that Nor-Com violated that policy. Wrongful discharge in violation of public policy is a discrete tort claim, not an alternative theory for Smith's breach of duty claim. Therefore, even if the Court agreed with Smith that the factual allegations in her complaint are sufficient to create an inference that she was terminated in violation of public policy, the claim would fail under Rule 8 of the Civil Rules of Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Smith's complaint contains no allegations that would alert Nor-Com to the fact that she was asserting a claim for wrongful termination in violation of public policy. [*See* Record No. 1] Therefore, to the extent that she sought to assert such a claim, Smith failed "to satisfy even the minimal notice pleading requirements of the Federal Rules of Civil Procedure." *Tahfs v. Proctor*, 316 F.3d 584, 591 (6th Cir. 2003).

## IV.

Accepting the factual allegations in the complaint as true, Smith has failed to plead a plausible claim upon which relief may be granted for promissory estoppel, IIED, retaliation, or breach of duty of good faith and fair dealing. Regarding her race discrimination claim, however, Smith has "nudged [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Nor-Com, Inc.'s Motion to Dismiss [Record No. 16] is **GRANTED** with respect to Counts II, III, IV, and V. The motion is **DENIED** with respect to Count I.

2. Plaintiff Yvette Smith's claims for promissory estoppel (Count II), IIED (Count III), retaliation (Count IV); and breach of duty of good faith and fair dealing (Count V) are **DISMISSED**, with prejudice.

This 17th day of January, 2013.



Signed By:
*Danny C. Reeves* DCR
United States District Judge